UNITED STATES of America, Plaintiff-Appellee,

v.

DETROIT, TOLEDO & IRONTON RAILROAD COMPANY, Defendant-Appellant.

No. 15080.

United States Court of Appeals Sixth Circuit.

April 18, 1963.

Frederick C. Nash, Detroit, Mich. (Frederick C. Nash, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., on the brief), for appellant.

Robert F. Ritzenhein, Detroit, Mich. (Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., Thomas H. O'Leary, Sydney Brodie, Attys., Dept. of Justice, Henry L. Hilzinger, Atty., Interstate Commerce Commission, Washington, D. C., on the brief), for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and WILLIAM E. MILLER, District Judge.

WEICK, Circuit Judge.

The United States filed its complaint in the District Court against Detroit, Toledo & Ironton Railroad Company to recover a penalty alleging that the railroad violated the Hours of Service Act, 45 U.S.C. §§ 61–64 by allowing one of its trainmen, Donald W. Baden, to work more hours than the statute permitted. The case was tried by the District Judge, without a jury resulting in a judgment in favor of the Government for $500 from which this appeal was taken.

The pertinent provision of the statute which the Government claimed was violated by the railroad is as follows:

"*  *  * no such employee who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty, *  *  *." 45 U.S.C. § 62.

The only question in the case was whether the trainman was "on duty" when driving his automobile from his home in Flat Rock, Michigan to Napoleon, Ohio and returning thereto, a distance of about eighty-two miles each way, and each trip taking about one and three-fourths hours. He performed work for the railroad at Napoleon. It was admitted that the railroad was engaged in interstate commerce.

The railroad maintained an extra board at its yard office near Flat Rock, Michigan from which trainmen were called to work at the Flat Rock yard and also at yards near Napoleon and Lima, Ohio. When a trainman "marks up" on this extra board he placed himself on call for work at any of these yards. Baden was a brakeman. He had resided in Flat Rock with his family for about three years. He worked by assignment from the extra board. When Baden was hired he was asked whether he had a telephone and an automobile. He answered in the affirmative. The distance from his home to the Flat Rock yard required about thirty minutes to walk. He understood that in going to Napoleon he would have to go by automobile. He could drive his own car, have his wife or some one else drive him there or ride in another person's car. He was called for duty at Napoleon about once or twice a month.

On some of the trips to Napoleon he took his wife with him and would visit her family. When he went alone he stayed at times with his own family near Napoleon. He now lives at Napoleon and has a regular job there with the railroad. He had previously lived in Napoleon.

On Friday, January 15, 1960, while at home in Flat Rock, he was called on the telephone by the crew dispatcher at the Flat Rock yard office and told to deadhead[1] to Napoleon to work on Job 95 starting at 3:30 P.M. He left his home at 1:00 P.M. driving alone in his automobile and arrived at Napoleon at 2:45 P.M. He started work on Job 95 at 3:30 P.M. and worked until 11:59 P.M.

---

[1]. In railroad parlance, when a man is going to or returning from a job and is not working, he is deadheading.

that evening when he "tied up," which meant his assignment was completed and he was released from duty. Although under no instructions from the railroad, he decided to return to Flat Rock and mark up for work there on January 16, 1960. After he cleaned up, he ate at a restaurant and started to drive home arriving there at 3:00 o'clock in the morning. He immediately called the crew dispatcher at the Flat Rock yard and marked up. He went to bed about 3:30 A.M. At 6:30 A.M. that morning he was called by the crew dispatcher to report for work at 7:59 A.M. on Job 7 at Flat Rock. He told the dispatcher that he had tied up at 11:59 P.M. on January 15th at Napoleon. He ate breakfast and left for work going on duty at 7:59 A.M. and working until 3:59 P.M. when he was released.

Baden was reimbursed for expenses in operating his automobile for the round trip. He also received pay for an eight hour day for travelling from Flat Rock to Napoleon. He made claim against the railroad for an additional day's pay for the return trip to Flat Rock which was rejected by the railroad because of provisions in the union contract.

The Government claimed that Baden was on duty continuously during the time he was driving from his home at Flat Rock Friday afternoon until he returned there about 3:00 the following morning; that he was off duty only from 3:00 A.M. until 7:59 A.M. when he reported for work at Flat Rock which was less than eight hours; that after he had reported for duty on Saturday morning he had accumulated sixteen hours in the aggregate of on duty time in a twenty-four hour period which was a violation of the statute since his consecutive off duty time in the twenty-four hour period had been less than eight hours.

We will not question the finding that Baden was "on duty" within the meaning of the Act, while driving from his home in Flat Rock to the yard in Napoleon. Baden was required to report for work at a specific time and had to drive there in his own automobile. He could do nothing else while driving. We see no basis, however, for holding that he was still on duty while driving his automobile on his return trip home after he had finished his assigned job and had been released from duty. He was not required to return home, but could have remained in Napoleon over night. Accommodations existed there or he could have stayed with his relatives as he had on other occasions. He had originally intended to work on Saturday in Napoleon, but a notice was posted on the bulletin board there that Job 95 would not work until Sunday. He then decided to return to Flat Rock so that he might work on Saturday. The railroad did not know of his intention to return to Flat Rock until he called in and marked up at 3:15 in the morning. Until he called in and marked up the railroad had no control over him whatsoever. He was free to do as he pleased. The railroad did not know whether he drove his own car or had some one else do it. If Baden's wife had driven and he had slept in his car on the return trip home, no violation would have been charged against the railroad. In any event, after Baden tied up at 11:59 P.M. on January 15th, he was relieved from further duty at Napoleon. In our opinion, he was not on duty again until he reported at 7:59 the following morning. Eight hours had elapsed in the interim. If Baden did not get enough rest, he alone was responsible for it. We conclude that D. T. & I. was, therefore, not guilty of violating the Act. United States v. Great Northern Ry. Co., 9 Cir., 285 F. 152.

The judgment of the District Court is reversed and this cause is remanded with instructions to dismiss the complaint.